**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

UNITED STATES OF AMERICA

vs.                                                     Case No. 6:12-cr-205-Orl-37GJK-2

JOEL TORRES

**ORDER**

This cause is before the Court on the following:

1. Defendant's Motion for New Trial (Doc. 95), filed December 17, 2012;

2. Defendant's Renewed Motion for Judgment of Acquittal (Doc. 96), filed December 17, 2012; and

3. United States' Response in Opposition to Defendant's Motions for Judgment of Acquittal and for New Trial, and Supporting Memorandum of Law (Doc. 99), filed December 21, 2012.

Upon consideration, the Court hereby denies Defendant's motions, for the reasons set forth below.

**BACKGROUND**

A six-day jury trial was held in this matter beginning on November 26, 2012. (Docs. 108–13, Tr. Vols. I–VI.) Defendant, the owner of a used-car dealership, was charged with: conspiracy to commit money laundering (Count 2); money laundering (Counts 3–13); and failing to file certain tax forms, Form 8300 (Counts 14–24). (Doc. 83.) The key issues at trial were: (1) whether Defendant knew that the cash coming into his dealership was proceeds from drug trafficking; and (2) whether Defendant knew that he was required to file Form 8300s when purchases of more than

$10,000 were made in cash.

Evidence was adduced at trial demonstrating that Defendant knew that the money was from drugs. In 2010, G.I., a member of a drug cartel, began purchasing cars at Defendant's dealership with large amounts of cash. (Doc. 109, Tr. Vol. II, 25:25–27:13.) Eladio Marroquin-Medina, Defendant's former friend and business partner who became involved in drug trafficking with G.I., testified that Defendant was suspicious after G.I. bought the first few cars because of the cash influx. (*Id.* at 43:6–44:11.) In October 2010, Medina told Defendant that G.I. was a drug trafficker. (*Id.* at 44:23–25, 51:1–5.) Defendant responded that it "wasn't his problem or his business, that [they] were only selling cars."[1] (*Id.* at 44:10–11.) Even though Defendant was aware that G.I. was a drug trafficker, Defendant continued to sell cars to G.I. and to accept his cash on a weekly basis. (*Id.* at 45:1–16.) In fact, in the span of three weeks in November 2010, G.I. brought in over $120,000 in cash—more cash than all of the other customers had brought in during the rest of the year combined. (Doc. 110, Tr. Vol. III, 180:4–14.)

Furthermore, Defendant was present when the cameras were turned off in his office while Defendant, Medina, and G.I. counted the cash. (Doc. 109, Tr. Vol. II, 47:1–24; Doc. 110, 13:6–8.) Both Medina and G.I. testified that Defendant asked G.I. to bring larger cash denominations, rather than $5 and $10 bills. (Doc. 109, Tr. Vol. II, 48:11–23; Doc. 110, Tr. Vol. III, 15:7–18.) Both also testified that Defendant told G.I. not to bring money that smelled[2] of marijuana. (Doc. 109, Tr. Vol. II, 50:5–9; Doc. 110, Tr. Vol. III, 13:22–14:6.) Additionally, Adolfo Tamez, another drug trafficker, testified that he had

---

[1] G.I. also testified that at another point, Defendant stated that "he didn't want to be involved with the drugs, . . . that he was just buying vehicles for us." (Doc. 110, Tr. Vol. III, 17:21–25.)

[2] Defendant did not dispute that he said the money smelled, but averred that he would not know what marijuana smelled like. (Doc. 111, Tr. Vol. IV, 66:14–25.)

2

conversations with Defendant in which Defendant described vehicles with hidden compartments that could conceal drugs and money. (Doc. 110, Tr. Vol. III, 148:7–149:6.)

Evidence was also presented regarding Defendant's knowledge of the required tax forms. In 2006, Defendant and Medina attended a training course together to obtain their car dealer's licenses. (Doc. 109, Tr. Vol. II, 23:10–19.) At the course, they learned how to fill out Form 8300s when they received more than $10,000 in cash for a car. (*Id.* at 23:20–22, 25:11–17.) The regional manager of the Florida Department of Highway Safety and Motor Vehicles corroborated this assertion, testifying that such courses' curricula include a discussion of these forms. (Doc. 108, Tr. Vol. I, 236:12–243:10.) Defendant acknowledged that he attended training courses and passed tests to attain and maintain his license. (Doc. 111, Tr. Vol. IV, 33:9–17.) In fact, in the file for each car sold at the dealership, there is a checklist of forms to be filled out which includes "I.R.S. Form 8300"—that even says "+$10,000 cash" next to it. (*Id.* at 96:25–98:11.)

However, Defendant never filed any Form 8300s, even though G.I. purchased many vehicles with more than $10,000 in cash. (Doc. 109, Tr. Vol. II, 26:14–38:19; Doc. 110, Tr. Vol. III, 185:17–20.) The reason cartel members purchased the vehicles at Defendant's dealership was because Defendant and Medina did not report cash purchases over $10,000. (Doc. 110, Tr. Vol. III, 147:4–8.)

In March 2012, an IRS agent went undercover to purchase a car from Defendant to see if he would be willing not to file the required tax forms. (Doc. 110, Tr. Vol. III, 115:12–116:2.) Defendant was unaware that the agent recorded the conversation. (*Id.* at 116:9–10.) In the recording, Defendant discussed that he normally has to report cash transactions of more than $10,000. (*Id.* at 122:4–15.) The agent feigned that he was

asking for a "favor"—Defendant not reporting the purchase—in exchange for an extra $1,000 cash; Defendant responded that he was not willing to take the risk for that amount. (*Id.* at 125:19–25.)

Defendant moved for a judgment of acquittal at the close of the Government's case and at the close of all the evidence (Docs. 68, 73), both of which the Court orally denied (Docs. 69, 74). The jury acquitted Defendant of Counts 2–10 and convicted him of Counts 11–24.[3] (Doc. 82.)

Defendant subsequently moved for a new trial. (Doc. 95.) Defendant also renewed his motion for judgment of acquittal. (Doc. 96.) The Government opposed. (Doc. 99.) This matter is now ripe for the Court's adjudication.

## STANDARDS

### I. Motion for Judgment of Acquittal

Federal Rule of Criminal Procedure 29 provides that the Court must "enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." The test is whether, viewing the evidence and inferences drawn therefrom in the light most favorable to the Government, substantial evidence exists to support the verdict. *United States v. Schwartz*, 666 F.2d 461, 463 (11th Cir. 1982). The Court need only find that a reasonable juror could conclude that the evidence establishes Defendant's guilt beyond a reasonable doubt. *United States v. Hasson*, 333 F.3d 1264, 1270 (11th Cir. 2003). The Court is "bound by the jury's credibility determinations, and

---

[3] Notably, the jury acquitted Defendant of the money laundering counts related to transactions in 2010 (Counts 3–10), but convicted him of the counts related to transactions in 2011 (Counts 11–13). (Doc. 82.) This implies that the jury accepted Medina's assertion that he told Defendant that G.I. was a drug dealer in late 2010. It also suggests that the jury found the exponential increase in cash at the end of 2010 to belie Defendant's assertion that he was unaware of the source of the money going into 2011.

4

by its rejection of the inferences raised by the defendant." *United States v. Peters*, 403 F.3d 1263, 1268 (11th Cir. 2005).

## II.   Motion for New Trial

"[T]he court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "[A] motion for new trial made on the ground that the verdict is contrary to the weight of the evidence raises issues very different from a motion for judgment of acquittal notwithstanding the verdict, which is based on the sufficiency of the evidence." *United States v. Martinez*, 763 F.2d 1297, 1312 (11th Cir. 1985). On a motion for new trial, the Court need not view the evidence in the light most favorable to the Government. *Id.*

However, "[t]he court may not reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable. The evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand." *Id.* at 1312–13 (citations omitted). While the decision is within the sound discretion of the Court, granting a motion for a new trial is disfavored: "Courts are to grant them sparingly and with caution, doing so only in those really exceptional cases." *Id.* at 1313 (citations and internal quotation marks omitted).

## DISCUSSION

### I.   Acquittal

In support of his renewed motion for a judgment of acquittal, Defendant argues that "the Government did not present sufficient evidence of Defendant's knowledge that the money used to purchase the vehicles was the proceeds of illegal activity." (Doc. 96, p. 2.) On the contrary, significant evidence evinced Defendant's knowledge. Medina testified that Defendant was suspicious of the fact that the dealership was suddenly

flush with cash from one customer. Indeed, in less than one month, he had gotten more cash from G.I. than he had received in the entire rest of the year from all of his other customers combined—quite the red flag. Defendant was also present when the cameras were turned off so that he, Medina, and G.I. could count the cash—small bills that smelled of marijuana. Together with the evidence that Medina told Defendant that G.I. was a drug dealer, this all adds up to establish that Defendant knew exactly the source of his suddenly huge cashflow.

Defendant also contends that the evidence was insufficient to establish that he knew he was required to file Form 8300s. (*Id.*) However, plenty of evidence adduced at trial demonstrated Defendant's knowledge. He took the licensing classes and passed the tests. Medina stated that they learned about Form 8300s in the course, and those courses' curricula include a discussion of the forms. Further, the reason that cartel members went to Defendant's dealership was to get around the reporting requirement. Finally, the video of the IRS agent's undercover operation demonstrated that Defendant knew about the forms and chose not to file them when it suited him—namely, when the risk of the "favor" was worth the reward in extra cash.

Though Medina and G.I. certainly do not have sterling credibility, their testimonies were internally consistent and they corroborated each other's stories. The jury obviously found that Defendant's own credibility was lacking when he swore that he did not know anything, even in the face of a sudden sharp spike in cash profits consisting of $5 and $10 bills[4] that literally smelled like marijuana.

The testimony of those witnesses and numerous others, along with the bank

---

[4] "Nickel bags" and "dime bags," in drug parlance, are "the units in which small amounts of marijuana are generally sold for five or ten dollars." *State v. Williams*, 321 S.E.2d 561, 564 (N.C. Ct. App. 1984).

records and video recording, firmly support the notion that Defendant indeed knew the illegal source of the money and knew that he was supposed to report the purchases. Viewed in the light most favorable to the Government, a reasonable juror could certainly find Defendant's guilt beyond a reasonable doubt based upon this evidence. Therefore, Defendant's motion for a judgment of acquittal is due to be denied.

## II. New Trial

In support of his motion for a new trial, Defendant first argues that "the Court erred in allowing the Government to introduce evidence of drug trafficking" committed by Medina and the other alleged co-conspirators. (Doc. 95, p. 1.) Defendant contends that "[t]here was not one piece of evidence that Defendant was involved in or even knew about these activities." (*Id.* at 2.) He submits that the evidence about drug trafficking worked substantial prejudice on his case, justifying a new trial. (*Id.*)

The Court considered Defendant's motion to exclude evidence of the drug trafficking conspiracy carefully, and accordingly limited the scope of examination on that matter several times during the trial. The Court only allowed such testimony to the extent that it bore on Defendant's knowledge or the credibility of witnesses involved in the conspiracy; further, the Court gave the jury numerous limiting instructions to that effect. (*See, e.g.*, Doc. 109, Tr. Vol. II, 60:11–23; Doc. 110, Tr. Vol. III, 29:23–30:10, 34:16–35:7, 35:20–36:6.) Even with these limitations, ample evidence supported the conclusion that Defendant knew that the money he was receiving was from drug trafficking, as discussed above. Therefore, Defendant was not substantially prejudiced.

Defendant also argues that Medina's testimony—specifically, that he and Defendant learned that they had to file Form 8300s during a course they attended together—should be disregarded in light of his "significant credibility issues." (Doc. 95,

7

p. 4.) As discussed above, though Medina did in fact have some blemishes on his credibility, his testimony was internally cohesive and corroborated by other witnesses. Defendant's own credibility, on the other hand, was highly suspect, as he stated that he took not one but multiple training courses and passed tests on the material. On cross-examination, he was evasive and his answers were internally contradictory. (*See, e.g.*, Doc. 111, Tr. Vol. IV, 89:19–90:9, 97:24–98:11, 99:6–100:6.) Additionally, the undercover video severely undercut Defendant's protestations that he did not know about the forms because he intimated that he would choose not to file them if the price were right.

Thus, in light of the record as a whole, the Court finds that the verdict was not against the great weight of the evidence. There was no miscarriage of justice here; Defendant had his day in court, the evidence proved him guilty, and the verdict should not be disturbed. Therefore, Defendant's motion for a new trial is due to be denied.

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. Defendant's Motion for New Trial (Doc. 95) is **DENIED**.
2. Defendant's Renewed Motion for Judgment of Acquittal (Doc. 96) is **DENIED**.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on March 7, 2013.

ROY B. DALTON JR.
United States District Judge

Copies:

Counsel of Record